J-A03014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: DAVID C. NOWAKOWSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: DAVID C. NOWAKOWSKI | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 870 WDA 2023 |

Appeal from the Order Entered June 30, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-MD-0000225-2023

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM PER CURIAM:                **FILED: February 14, 2024**

David C. Nowakowski appeals *pro se* from the order that denied his petitions for review of the disapproval of his private criminal complaint.[1]  We affirm.

We glean the following facts from the certified record.  Appellant resides at a property owned by his mother in Erie County, Pennsylvania.  In 2022, he became embroiled in a border dispute with a neighbor.  In essence, each neighbor believed that the other was intruding upon her land.  Appellant paid for a survey which revealed that a fence line and parking area for the two properties east of the property owned by Appellant's mother encroached by up to eleven inches.  The neighbor conducted his own survey which produced

---

[1] Although the certified record contains documents to which Appellant attested by signing a "Certificate of Counsel," we see no indication that he is an attorney who is licensed to practice law in this Commonwealth or anywhere else.

different results. Appellant took actions, such as removing some bricks from an allegedly-encroaching driveway, that prompted the neighbor to come onto his mother's land to retrieve them. There were verbal and physical confrontations and calls to police, none of which resulted in the police issuing citations.

Appellant filed at least six private criminal complaints in 2022, on behalf of either his mother or himself. In one, he requested "that the [c]ourt transfer title of [the neighboring parcels] to [Appellant,]" in order to "discourage complex systems of land theft intended to take advantage of the easy going nature of an American citizenship, once described by the great General Patten [*sic*] as a 'therapeutic nation,' when fearing comparison of our nation[']s fighting arm to that of the ultra[-]aggressive Nazi regime." PC-438-22, undated, at 7-8.[2] **See also** PC-439-22, undated, at 7-8 (same). In other complaints, Appellant requested theft, harassment, assault, and trespass charges be bought, in addition to $25,000 or $50,000 to be paid by the neighbor.[3] **See** PC-431-22, 5/23/22, at 4-5; PC-432-22, 5/23/22, at 4-5. The Office of the District Attorney ("ODA") declined to approve any of the first five complaints, due to lack of prosecutorial merit.

---

[2] The earlier complaints were attached to the September 20, 2022 complaint.

[3] The basis of the financial award, be it damages or restitution or something else, is not specified.

Appellant filed the private criminal complaint at issue in this appeal on or about September 20, 2022. Therein, Appellant indicated that he called the neighbor a "fucking piece of shit" after overhearing the neighbor tell Appellant's mother that Appellant "was a 'nut and was going to jail.'" PC-895-22, 9/20/22, at 3-4. Appellant attached security camera photos from later that day which he claims show the neighbor "looking for a confrontation." *Id*. at 4-5. He also stated that the neighbor represented himself as a personal friend of District Attorney Elizabeth A. Hirz ("DA"), who was working with the neighbor to bring criminal charges against Appellant, and that the neighbor was "not done with [him] yet." *Id*. at 4. This time, Appellant requested that the neighbor be charged with criminal trespass, stalking, terroristic threats, and corruption of a public official. *Id*. at 7. Further, Appellant accused the DA of being "completely corrupt and incapable of carrying out her duties[.]" *Id*. at 4.

The ODA again declined to approve the complaint for prosecution, citing lack of prosecutorial merit and insufficient information. On January 5, 2023, Appellant filed a petition for review of the disapproval of the September 20, 2022 private complaint. The ODA undertook another review of the complaint and on April 17, 2023, issued a second disapproval. On April 27, 2023, Appellant filed a "REPetition for REReview." Therein, Appellant maintained that the attorneys who disapproved the complaint on behalf of the DA ("ADAs") "have completely abused there [*sic*] discretion in a biased,

unconstitutional, and faithless way." REPetition for REReview, 4/27/23, at unnumbered 8. He argued that the ADA "ignore[d] photographic evidence, a professional land survey, and a system of crimes that worsens over time" and engag[ed] in worthless musings on the power of a DA to do what they please," instead of "engaging in the common sense of a duty[-]bound society, grounded in fairness." *Id*. at unnumbered 12.

The trial court scheduled the matter for oral argument. While Appellant acknowledged "the necessity for district attorneys to sort of have ultimate and overriding control over issues like this," he indicated that he sought review because the ODA failed to offer any "descriptive information" about what was missing from the complaints or the "real reasonings behind their denials." N.T., 6/12/23, at 3-4.

The ADA indicated that the phrase "lacks prosecutorial merit" in this case meant "that the [ODA] is not capable of prosecuting civil crimes." *Id*. at 11. She explained that Appellant and his neighbor "are arguing over a boundary line or a property line, to which the Commonwealth has no say in, no knowledge of, and does not get involved with[.]" *Id*. The ADA expounded: "I have no idea who is right or who is wrong, but in terms of a boundary dispute, I cannot charge [the neighbor] with violating this boundary dispute, while also [Appellant] is admitting to doing the exact very same thing." *Id*. at 12. The ADA further described how she had learned not to get involved in these property-line disputes through another case that went on for years of

- 4 -

back-and-forth summary and misdemeanor charges, but it was to no avail without the establishment of where the boundary line actually was. *Id*. at 13-14. As for claims of disorderly conduct and the like, the ADA stated that she lacked proof that these actions taken on private property posed any threat of a public disturbance. *Id*. at 12.

Appellant responded that, as it was the first time he heard more than a boilerplate reason for the disapprovals, he was not sure "whether or not it's appropriate to appeal and try to move forward or not," although he insisted that the claims of trespass and vandalism could be separated from the civil issues. *Id*. at 16. The ADA responded that each disapproval included an invitation to call if Appellant had any questions, and had Appellant availed himself of that invitation, she would have explained it to him. *Id*. at 18.

The trial court took the matter under advisement and on June 26, 2023, entered an order denying Appellant's Petition and REPetition. Therein, the court stated that Appellant failed to establish that the DA abused its discretion such that its decision should be overridden. Specifically, Appellant did not convince the court that the ODA acted "in bad faith, fraudulently, or unconstitutionally," or that the disapproval was "arbitrary or pretextual." Order, 6/26/23, at unnumbered 3.

Appellant filed a timely appeal in this Court, which we transmitted to the trial court pursuant to Pa.R.A.P. 905. After Appellant paid the appropriate fee, the notice was docketed in the trial court and the trial court ordered Appellant

to file a Pa.R.A.P. 1925(b) statement. Appellant filed a statement in this Court, which we again transmitted to the appropriate filing location. In his statement, Appellant complained that the ADA and trial court premised their decisions upon the erroneous belief that he and his neighbor had competing legitimate surveys, while Appellant was the only one whose survey was performed by a professional. **See** Statement of Error, 8/31/23, at unnumbered 1-2. Appellant alleged that the ADA's "lies" about the neighbor's survey evinced the lack of good faith in the disapproval. **Id**. at unnumbered 2. The trial court issued a brief statement pursuant to Pa.R.A.P. 1925(a) in response, and this case is ripe for our adjudication.[4]

Appellant presents the following questions for our review:

[1]. Does the denial of the affiant's private criminal complaint under the argument that the instant action "lacks prosecutorial merit" illustrate an example of bad faith, fraud, or unconstitutionality on the part of the [ADA] culminating in an abuse of discretion[?]

[2]. Did Judge Ridge error [*sic*] in his decision to avoid a *de novo* review of the four corners of the private complaint ignoring significant evidence and the absence of discretion by the [ADA] highlighted by false statements[?]

[3]. Does the review process of private criminal complaints in the Commonwealth of Pennsylvania offer adequate due process or are the majority of an aff[i]ant's interactions with the office of the district attorney and courts of common pleas subversive and designed to not just limit access to criminal justice, but also force innocent Americans to stomach the behavior of criminal elements under the ruse of a perverted sense of civil obedience?

---

[4] The ODA has declined to file an appellate brief, relying upon the trial court's opinion to express the ODA's position.

Appellant's brief at 8 (unnecessary capitalization omitted).

We begin with a review of the applicable law. As this Court has observed:

> The District Attorney's function is to represent the Commonwealth in criminal prosecutions. The District Attorney exercises this responsibility by first evaluating complaints to determine whether criminal charges should be brought against an individual. The private prosecutor, even if he or she was the victim, has no legitimate interest, other than as a member of the general public, in seeing a violator of the laws brought to justice by the Commonwealth and punished for his misdeeds.

*Commonwealth v. Pritchard*, 596 A.2d 827, 831 (Pa.Super. 1991) (cleaned up). Accordingly, "[i]t would make little sense to grant to the attorney for the Commonwealth broad prosecutorial discretion in his role as advocate for the Commonwealth," if a private citizen had "the ability to file complaints without the approval of the District Attorney whenever an alleged victim makes out a complaint involving some type of violent act" or other illicit activity. *Id*. Nonetheless, our Supreme Court has established a mechanism for citizens to request the initiation of a criminal prosecution.

Pennsylvania's criminal complaint processes are governed by the Rules of Criminal Procedure. Pursuant to Rule 503, "[i]n every court case a complaint shall be filed with the appropriate issuing authority." Pa.R.Crim.P. 503. The issuing authority is "any public official having the power and authority of a magistrate, a Philadelphia arraignment court magistrate, or a magisterial district judge." Pa.R.Crim.P. 103. A criminal complaint must contain, *inter alia*, the name and signature of an affiant who is leveling

accusations against a named or otherwise described defendant. *See* Pa.R.Crim.P. 504(1)-(3), (13).

In cases in which "the affiant of the complaint is not a law enforcement officer, the complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove it without unreasonable delay." Pa.R.Crim.P. 506(A). If the Commonwealth attorney approves the complaint, she so indicates and transmits it to the issuing authority. *See* Pa.R.Crim.P. 506(B)(1). If the attorney for the Commonwealth "disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter, the affiant may petition the court of common pleas for review of the decision." Pa.R.Crim.P. 506(B)(2).

Regardless of the basis asserted by the ODA for disapproving a private criminal complaint, a trial court considering a petition for review "may only overturn that decision if the private complainant demonstrates that the disapproval decision amounted to bad faith, occurred due to fraud, or was unconstitutional."[5] *In re Ajaj*, 288 A.3d 94, 109 (Pa. 2023). Our High Court has specified that "bad faith is demonstrated when the prosecutor acted with a fraudulent, dishonest, or corrupt purpose." *Id*. "The private criminal

---

[5] Prior case law had established different standards depending on whether disapproval was based upon legal conclusions, policy considerations, or a hybrid of the two. Our Supreme Court eliminated the distinctions in *In re Ajaj*, 288 A.3d 94 (Pa. 2023), and set the above universally-applicable standard of review.

complainant has the burden to prove the district attorney abused his discretion, and that burden is a heavy one." ***In re Private Criminal Complaints of Rafferty***, 969 A.2d 578, 581 (Pa.Super. 2009).

When the trial court's ruling on its review of the district attorney's disapproval is appealed to this Court, we are "limited to ascertaining the propriety of the **trial court's** actions. Thus, our review is limited to determining whether the trial court abused its discretion or committed an error of law." ***Commonwealth v. Brown***, 669 A.2d 984, 990 (Pa.Super. 1995) (*en banc*) (emphasis in original) (cited with approval as to this point in ***In re Ajaj***, ***supra*** at 110).

With these principles in mind, we turn to Appellant's questions. His first two issues are interrelated. The first directly attacks the ADA's disapproval decision, while the second more properly challenges the trial court's assessment of that disapproval. We consider the arguments Appellant offers as to both questions in conducting our review of the trial court's decision.

Appellant asserts that the bad faith of the ADA's disapproval for lack of prosecutorial merit and insufficient information is illustrated by the failure to consider his video surveillance footage and professional land survey. He claims that the ADA's disregard of the still photographs he attached to the complaint as being "of no value" reveals that the ADA is "idiotic and despotic." Appellant's brief at 15-16. He maintains that his property survey was performed by a professional, and the ADA lied when she construed his

neighbor's "false land survey" created by the neighbor and a third party "through their own measurements" as a "conflicting survey." *Id*. at 15. Appellant also claims that the ADA's addition of "insufficient information" to the reason of "lacked prosecutorial merit" after the re-review of the complaint evinces the ADA's bias and attempt to "illegally avoid review of the evidence provided by [Appellant]." *Id*. at 16.

Finally, Appellant argues that the trial judge erred "in his decision to avoid a *de novo* review of the four corners of the private complaint," and instead both "failed to recognize that the [ADA] was lying to his face in his courtroom" and "also failed to see [the] lack of cogence in the [ADA]'s argument." *Id*. at 17. For example, Appellant bemoans that the trial court did not in its Rule 1925(a) writing discuss an alleged instance of trespass where he had "isolated the video frame that showed the exact moment the offender crossed the property line," yet the ADA still "remained unable to execute her duties due to her own inability to comprehend that the offending neighbor executed his criminal activities under his own mistaken beliefs." *Id*. at 20.

The trial court found no failure on the part of the ADA to consider the evidence presented by Appellant. Rather it credited her representations that she could "only discern so much from" the still photographs,[6] that the police

_____

[6] N.T., 6/12/23, at 13.

- 10 -

called during the incident involving the bricks "concluded that both parties were in the wrong," and that "the mutual disagreement over the property line, the conflicting information regarding the property line, and the antagonistic behavior by both parties" made a conviction "doubtful." Trial Court Opinion, 9/12/23, at 2. Observing that Appellant produced no evidence to support his claims that his neighbor's survey was invalid, such as a copy of the survey, or that the DA had a relationship with the neighbor that was the true, non-pretextual reason for the disapproval, the trial court concluded that Appellant failed to meet his burden of proof. *Id*. at 2-3.

We discern no error or abuse of discretion on the part of the trial court. The record belies Appellant's characterization of the ADA's statements concerning conflicting surveys as false. The ADA's representation was as follows: "I know both -- from hearing from both parties, both parties have gotten surveys done. Those surveys apparently conflict, whether one used one company and one used the other, again, I'm not sure. I don't practice in civil." N.T., 6/12/23, at 9. The key fact was not whose survey came from where. Rather, it was that, in order to prove the trespass and theft claims Appellant wished to bring, supposedly supported by his surveillance footage, the Commonwealth would first have to prove where the boundary line actually was situated and that the neighbor was wrong about where his property ended. The adjudication of where a disputed boundary lies is a matter for civil

litigation, not a criminal prosecution. *See* Pa.R.Civ.P. 1051-1058 (pertaining to an action in ejectment); 1061-1068 (governing actions to quiet title).

As noted above, the ODA's job is to represent the Commonwealth in criminal matters if it deems it appropriate to seek justice for a violation of penal laws. *See Pritchard*, *supra* at 831. "If a **private** prosecutor feels individually harmed **his remedy is a civil suit** for damages." *Id*. (emphases added). The trial court here acted within its discretion in ruling that the ODA did not disapprove the complaint for an improper basis where it determined that Appellant had adequate civil remedies. *See Commonwealth v. Cooper*, 710 A.2d 76, 81 (Pa. Super. 1998) (affirming disapproval of private criminal complaint where civil remedies were available to the affiant). Appellant's first two issues merit no relief.

Appellant's final issue is that Pennsylvania's review process for private criminal complaints fails to satisfy due process. He raises this claim for the first time on appeal in contravention of Pa.R.A.P. 302(a). Further, he failed to file proof of service of his challenge to the constitutionality of the applicable general rules to the Court Administrator of Pennsylvania as mandated by Pa.R.A.P. 522(a) (incorporating by reference the notice procedure detailed in Pa.R.A.P. 521(a)). Moreover, Appellant failed to develop his constitutional challenge with citation to, and discussion of, pertinent legal authorities as

prescribed by Pa.R.A.P. 2119(a).[7] **See 9795 Perry Highway Mgmt., LLC v. Bernard**, 273 A.3d 1098, 1103 (Pa.Super. 2022) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant."). For all these reasons, Appellant's due process issue is waived.[8]

In conclusion, Appellant attempted to utilize the resources of the Commonwealth to prosecute his mother's civil boundary dispute, seeking to have taxpayers assume their litigation costs for a quiet title or ejectment action. Furthermore, rather than calling the local police to report any threatening or assaultive behavior, Appellant engaged in a practice of drafting serial private criminal complaints full of unsupported allegations of corruption and outrageous allusions to Nazis and other *ad hominem* attacks upon the DA and her assistants. Despite this inappropriate behavior on Appellant's behalf,

---

[7] For example, Appellant does not acknowledge or discuss long-standing precedent holding that "the provision in the Rule allowing an appeal of the district attorney's disapproval of such charges to the court constitutes sufficient checks and balances upon the district attorney's actions to comply with constitutional due process requirements." **In re Private Complaint of Owens Against Coker**, 810 A.2d 172, 177 (Pa.Super. 2002) (internal citations omitted).

[8] Appellant also failed to include the issue in his Pa.R.A.P. 1925(b) statement. However, Rule 1925(b) does not serve as an additional basis for finding waiver here because the trial court's order did not contain all elements mandated by Pa.R.A.P. 1925(b)(3) (indicating that the order shall specify, *inter alia*, "both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement"). **See**, **e.g.**, **Rahn v. Consolidated Rail Corporation**, 254 A.3d 738, 747 (Pa.Super. 2021) (explaining that deficient Rule 1925(b) compliance does not result in waiver where the trial court's order is itself deficient).

the trial court patiently listened to his arguments and rendered a thoughtful, reasonable decision supported by the law and the certified record. Consequently, we have no hesitation in affirming the trial court's ruling that the DA properly exercised prosecutorial discretion in declining to approve Appellants private criminal complaints.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/14/2024